May it please the Court, Robert Gonzales on behalf of Petitioner Dioniso Castro. I'd like to reserve three minutes of time for rebuttal. In deciding whether Mr. Castro's conviction involved moral turpitude, the Board held that California's Section 136.1A2, which prohibits attempts to dissuade a witness from testifying, categorically covers only conduct that involves moral turpitude. That was legal error and requires reversal. First, under this Court's precedent, crimes involving moral turpitude that are non-fraudulent almost always involve an intent to inflict harm. Counsel, I hate to interrupt your argument, which I'm sure is going to be outstanding, but I want to be sure of one thing. Regardless of what we do with the CIMT issue, as I understand it, Castro is still removable under 1182A6A1, being present without admission or parole. Is that correct? Well, Your Honor, the immigration judge did sustain that grounded removability, but the Board did not address it. And thus, this Court cannot affirm on those grounds under Chain Reaction. So you're saying if it was not appealed, we can't follow that? This Court reviews the Board's decision. No, I understand that. The reality is that it was not appealed. That's what the IJ found. That still, nonetheless, is a finding, right? Even though we're not reviewing it, that is the fact. And he's not entitled to relief, regardless of what we do with the CIMT issue, if that is correct. Is that right? Well, he would be potentially entitled to relief under cancellation or removal. Well, yeah. That's a separate procedure. But I'm just saying as of right now. Well, as I said. You have that previous determination that is not challenged. Is that correct? If you look at the Board's opinion, though, it was not a ground that they relied on. So it would be improper. What do you mean they didn't rely upon it? Didn't they find that? The Board's opinion. I don't mean the Board. I'm talking about the IJ. The IJ did find that. Okay. And it was not appealed. Therefore, unless you file a different proceeding to try to overturn that, that ground alone is sufficient to warrant removal or barring, right? At the immigration proceeding level, it would have been sufficient. So why doesn't that move this appeal? Your Honor, under basic principles of administrative law, I think a court cannot affirm the agency's decision on grounds that the agency itself did not rely on. So here the Board did not rely on Mr. Castor's removability under that provision. It relied exclusively on the moral interpretation. But if we can't give you any relief of any practical importance because of the non-appealed matter, then why are we spinning our wheels? Well, there is relief available. If the Court finds that his crime was not one involving moral turpitude, then that opens the avenue for cancellation of removal, voluntary departure, and other avenues of relief that he saw below. But following up on what both my colleague and I have been asking you about, in this particular case, based upon the IJ's finding, Mr. Castor can't qualify for cancellation of removal because he can't show that he had good moral character based upon the time that he served. So I understand that he served at least 225 days in prison. And under 1101F7, if somebody spends more than 180 days as a result of the conviction, they cannot qualify as having good moral character and, therefore, in this situation are not entitled to relief under 212C. Isn't that correct? Well, Your Honor, there is a question about how the counting is done. Well, even if you do what you say, which is barred by one of our own cases, Oregon Moreno, which you're saying that the question of actual custody versus good time, work time, and so on, that particular case, Oregon Moreno, says you do count it. So under the circumstances, I guess we're both wrestling with the problem of as interesting as the CIMT issue is, and it is interesting and difficult. Make it all three of us. We don't want to go up the hill and find out we don't have a payload. I understand, Your Honor. Yeah. So if you can help us out, that would be helpful. I think the key problem here is that Mr. Castro didn't have a chance to really flesh out his eligibility for relief or any of those issues because the door was shut at the CIMT stage. So the immigration judge, first and foremost, focused on the moral turpitude offense, and that's what the Board relied on. So that's what's before this Court. But, again, maybe we ought to just let you move forward on that. But I think the reality is that you've got the IJ opinion. The IJ clearly did find this offense did find that it was not admissible or rather that it was still subject to removal based upon the time that he served and the like. And I think we're all struggling with the fact that either way, he's got a problem. It is a thorny issue. But I think if we just go back to SCC v. Chanery and Supreme Court precedent, the basic principle that the Court should be reviewing the actual grounds that the agency relied on, and those grounds is the moral turpitude question. So what you're saying, if I understand you correctly, that even though it's a final determination by the IJ because the time to move to the Board of Appeal is gone, even though it's a final determination which the service is in a position right now, I suppose, to go ahead and fulfill because it has nothing to do with the case we've got before us, that there's some way that we can't enforce that, is there a way around it by remanding to the Board and asking them to take a position on it? That may be one way around it, Your Honor. I know you don't want to try and help us out with ways around it, so I'll save that question for your colleague and let her worry about it. Thank you. I don't want to put you in that position. That's okay. I'm sure it will be an excellent argument on the CIMT matter. Well, that is the core problem, and I think it would benefit from guidance. As you know, the approach to a crime involving moral turpitude, you compare the federal generic definition to the elements of the statute. Here, the statute prohibits attempting to dissuade a witness from testifying, and it does have an intent element, which is knowingly and maliciously, but the statute itself defines malice as having an intent to vex, annoy, harass, or injure. Under this Court's precedent, an intent to injure is what's necessary, but we don't know here whether he was convicted with an intent to vex or with an intent to annoy or any other thing. In addition, I think California's statutory scheme really indicates a lot about the nature of it. California courts have found that this statute is a wobbler statute, which means it includes felonies and misdemeanors. It's written very broadly, and there's other provisions within the statute. For example, 136.1c, which explicitly addressed when done with an express or implied threat of force, Mr. Castro wasn't charged under that statute. So I think there's a lot of ambiguity in the statute, and I don't think under the precedent that there is an intent to harm there. Let me ask you another question. Let's assume I agree with what you're about to say about the CIMT and all the deference issues and so on. And let's just say that you're absolutely right on that. But in this case, is he entitled to any form of relief? Because not only does he have the prison time, but he doesn't have a visa. Doesn't that also make it so he's not eligible for any relief under Morales-Escuero? Well, he has an approved I-130 petition, and so now he's waiting for his visa to come up. But he doesn't have one now. He doesn't. Without that, he can't get relief. A few years out. But that is just a matter of time. And the real problem is that because of the moral turpitude issue, he didn't really have a chance to flesh any of those issues out before the immigration judge. That's what's driving the need to address moral turpitude here. Tell me, as I understand it, that what you're saying is that we don't come directly under the statute. What did they have to prove to get within the statute? They had to prove that he knowingly and maliciously dissuaded a witness from attending or giving testimony at a judicial proceeding. Do you think there's enough evidence here if that went to trial and a jury received an instruction asking the question, that there's enough evidence for a jury to decide that question? Well, it did go to trial, Your Honor. This wasn't a plea. So he was convicted by a jury. So there is enough evidence. But all we know, all the board could probably look at and all this court can look at are documents that say basically he was convicted under 136.1A2. We're not allowed to look at the trial and the evidence in the trial? Under Tocatli, and which reaches back to Taylor, no, because the jury could have heard lots of things at trial, and not all of those were necessary for his conviction. That's what the Tocatli case says, is that even under the modified category workload approach, we're only looking at information that was necessary for his conviction. Well, was it necessary for his conviction? Wasn't a part of that that he went and pointed to the witnesses and let them know he was going to shoot them if they do anything, or at least could be interpreted that way? We don't know if that was necessary for his conviction. It might have been the fact that he was sitting outside in the car. It might have been the fact that his friends went into the house. We don't know what was necessary. That's why we have this rule from Tocatli, which reaches back to Taylor, that limits the set of documents that can be properly looked at. And turning now to this Court's precedent, I think Navarro-Lopez and Blanco v. Mckayse are both very instructive. In Navarro-Lopez, the Court addressed California's accessory after the facts statute and held that that statute did not categorically involve moral turpitude. And it did so by saying that attempts to impede law enforcement or deprive the government of information are not morally turpitudinous. In Blanco, that involved providing false identification to a police officer. And again, the Court held there that depriving the government of information is not turpitudinous. And I'd like to now turn to the deference issue. It's clear here that there's no Chevron deference merited. It's only Skidmore deference. And for the reasons stated before, this opinion has no power to persuade. The Board did rely on one published decision, Robles-Urea. But that decision referenced the panel decision in Navarro-Lopez dealing with accessory after the fact. That panel decision was then reversed on Bonk. So there's no valid law that the Board has relied on. With that, I would like to reserve the rest of my time for rebuttal. Okay. Very good. We'll hear from government. May it please the Court, Your Honor. Nancy Cantor on behalf of the Attorney General. The statute under which Petitioner was convicted here, California Penal Code 136.1A2, is categorically a CIMT for two reasons. One, it contains the requisite degree of scienter. And two, it involves reprehensible conduct. Here, the express language of the statute requires that the individual knowingly and maliciously attempts to prevent or dissuade any witness or victim from giving or attending testimony. The agency reasonably concluded that the conviction constitutes a CIMT by its plain terms, which requires malicious intent. Petitioner argues that Petitioner argues that here the malicious intent element is not met and cites two cases in which the Court has held that certain crimes do not fall within the definition of CIMT. However, I believe the arguments presented by Petitioner involve cases in which the crimes were general intent crimes, which did not actually specify the level of intent required. Here, the statute expressly states that the Petitioner must knowingly and maliciously attempt. The Petitioner must knowingly and maliciously intend to engage in certain conduct. It's not a general intent crime, so therefore it satisfies the intent crime. Petitioner also argues that there is not a crime that requires an intent to commit fraud. The Petitioner does not, Your Honor. It's not an intent. It's not – I think the problem is we're conflating the intent to commit the crime specified in the statute with intent to commit fraud. Those are two separate questions in here. It's whether there is an intent to commit the acts which are prohibited by the terms of the statute. And it also goes beyond conduct involving turpitude, right?  That particular statute. Exactly. Now, under the circumstances, isn't it a fair construction to say that 136.1a2 is probably not a crime involving moral turpitude under the modified categorical approach, given what was presented here? Excuse me, Your Honor? In other words, I'm moving down the trail here. I'm going ahead of you. What I'm saying is if we think that 136.1a2 does not meet the categorical requirements under Taylor, if you look at the modified categorical approach here, it doesn't seem to meet that either, at least to me. So I guess what I get down to, again, is where I started off with your opponent. And that is if we find that the Taylor requirements are not met here, does he get any relief anyway in light of the visa issue that I mentioned earlier and the other items that were mentioned in paragraph 4F, I think, of the decision? 4F of? This is of the I.J.'s decision. This has to do with that he's not entitled to adjustment of status because of no visa. We're asking you about whether or not we really have to go up a hill without a payload. Right. Well, first, I'll state that I do believe Petitioner's crime was a CIMT. Understand. Understanding that, if the Court should find that it was not – if the Court should find that his conviction is not a CIMT under either categorically or under the modified categorical approach, he – the only relief he is conceivably eligible for is cancellation of removal. The – there are two grounds of inadmissibility that were charged here, entry without inspection in violation of – well, you don't need to know statutes, but entry without inspection and for CIMT. The CIMT renders him statutorily ineligible for cancellation of removal. He's still eligible for cancellation of removal notwithstanding his entry without inspection. So if we do away with the CIMT conviction, it would have to go back to the agency for a determination as to whether or not he meets the cancellation requirements. Your Honors had previously asked about the good character element. Is – you know, could he possibly meet that? Under paragraph – well, under paragraph, I guess, 4F of the immigration judge's With regards to removability, the immigration judge only held that he was inadmissible as a result of his CIMT. I believe the good character – good moral character elements that the immigration judge looked to were during the bond proceedings and whether or not he was eligible for a stay. So – So were we to send it back on the cancellation of removal issue and the judge were to find the same things we talked about in terms of the number of days served, he'd be right back where he started from, right? Yes. He would be right back where he started from. But the immigration judge, when it made those findings as to the number of days served, those were as to voluntary departure and stay, not as to cancellation removal. My reading of the – what day is this? The February 24, 2010 immigration judge decision and the basis for finding the petitioner ineligible for relief as to cancellation removal is because of his CIMT conviction. Okay. So the adjustment of status issues, preclusion because of the conviction after jury trial and not a plea agreement, and the fact that he's precluded from voluntary departure, all of those are irrelevant to the issue of going back to review the cancellation of removal, right? Because that's a separate issue. I think those are separate issues, Your Honor. Okay. Right. So, I mean, he's barred from – he would be barred from adjustment of status because there's – I mean, there's no visa available. I checked the February 2012 visa bulletin. Currently, they only have visa priority dates available up to May 1996, and petitioner's visa priority date was April of 2001. So it's going to be a very long time before he has a readily available visa. If the Court has any questions regarding his CIMT conviction, I'd be happy to answer them or rest on arguments presented in our brief. I don't believe we do. Thank you. Rebuttal. Thank you, Your Honor. Aren't you glad we asked her? Yes. Thank you, Your Honor. I'd like to just turn quickly back to the question of relief and make a few points. First, I want to reiterate that this Court has repeatedly held that on review, the focus should be on the Board's opinion. And if we look at the Board's opinion here, it really was driven by the moral turpitude issue. All right. But let's just say – let's just say we agree with you on what you were about to say and what you did say in your brief. Let's say we agree. And the CIMT issue is just not – they don't win on that. Do you agree with what counsel indicated that what we would have to do then is to send it back, but your client loses there anyway because of the prison time, sir? Does that make sense to you? Not that he loses, but that that's the logic of it. If you send it back, Mr. Castro would have an opportunity to flesh out all avenues for relief, as he deserves the opportunity. Not if we send it back to deal with that one issue. Well, he's also eligible for adjustment of status. And, yes, the visa bulletin. The Board already talked – not the Board. The IG already talked about that. There's no visa number. And as she pointed out, even though he has qualifying relatives, there's simply no visa number available. And without that, he can't get relief. But the visa number is just a matter of time. And, yes, the visa bulletin at the moment says it's five years out or so. But those visas – Does that mean he's entitled to just stay here waiting for the visa? No, Your Honor, but he's entitled to a chance to actually flesh out these elements before the immigration judge as a matter of law. I mean, here we have a Board opinion that relied on faulty reasoning, an immigration opinion that relied on faulty reasoning, and the doors were closed to Mr. Castro based on the moral turpitude grounds. And to leave that open just because his relief may be questionable really would shut the door too early based on erroneous reasoning. For that, I urge you to reverse, and thank you. All right. We thank both counsel for their arguments. The case of Castro v. Holder is submitted.
judges: Rakoff, Wallace, Smith